[No. C008130. Third Dist. Oct. 11, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
JOEL McKIM, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gary A. Binkerd and Joel Carey, Deputy Attorneys General, for Plaintiff and Appellant.

Donald J. Blake, Jr., for Defendant and Respondent.

## OPINION

EVANS, J.—In this helicopter aerial surveillance case, the People appeal from an order of dismissal entered after defendant successfully moved to suppress the evidence. (Pen. Code, § 1238, subds. (a)(7), (c); all further references to sections are to the Penal Code.) We reverse.

## FACTS[1]

Looking for growing marijuana plants, Sergeant Ronald Chaplin and Deputy John Huffaker of the Butte County Sheriff's Department conducted a general, random, helicopter surveillance of rural portions of the county on August 10, 1986. In the generally mountainous Berry Creek area, the officers were flying a "straight line-grid" pattern when they saw plants resembling marijuana growing among natural vegetation approximately 30 to 40 yards from defendant's rural residence. (In executing the search warrant based on this surveillance, the officers discovered marijuana plants 15 yards to 100 yards from the residence.)

Deputy Huffaker, who was the passenger-observer, estimated the helicopter was about 500 feet above ground level (AGL) when these observations— documented by two photographs—were made. This estimate was based on Huffaker's flight experience, which encompassed about 700 hours of aircraft piloting, 200 hours of helicopter piloting, and an additional 1,000 hours of airborne observing. Huffaker did not check the altimeter during the flyover of defendant's residence and acknowledged relying on Sergeant Chaplin, the pilot, to maintain the craft at 500 feet AGL. In his affidavit supporting issuance of the search warrant, Huffaker stated he observed the marijuana from an altitude of not less than 500 feet AGL.

Sergeant Chaplin testified he believed the helicopter was about 500 feet AGL at defendant's residence because the craft was 2,800 feet above sea level (ASL) there. However, topographic maps and defendant's testimony indicated that defendant's residence was approximately 2,400 feet ASL, meaning the craft was approximately 400 feet AGL.

Robert Brooks, an expert in determining altitudes from photographs, opined that photos similar to Huffaker's flyover photos were taken from an elevation of "something less" than 450 feet AGL.

A neighbor of defendant's, John Molohon, testified that his work as a logger required him to judge the height of trees, and he opined that a marijuana surveillance helicopter he observed one day over his property during the weeks preceding defendant's arrest was only about 180 to 200 feet off the ground. This helicopter, flying in a grid pattern, was so loud

---

[1] Although the People and the defendant cite to the transcript of the preliminary hearing for their factual discussions on appeal, there was no stipulation at the suppression hearing that the judge consider the preliminary hearing transcript for purposes of the section 1538.5 motion. The motion to suppress was litigated only in the superior court. ( § 1538.5, subd. (i).) We are therefore limited on review to the facts presented at the suppression hearing. (*People v. Flores* (1979) 100 Cal.App.3d 221, 226, fn. 2 [160 Cal.Rptr. 839].)

Molohon exited his residence to see if it was landing. Molohon stated that marijuana-surveying helicopters fly much lower than logging-surveying ones, and in fact fly lower than any aircraft in the area. He acknowledged that his property was about 500 yards from defendant's and approximately 200 feet higher in elevation.

## DISCUSSION

The People argue that defendant's motion to suppress should not have been granted because (1) defendant lacked standing to bring the motion, (2) the officers viewed only "open fields" in which defendant had no privacy interest, and (3) the recent United States Supreme Court case of *Florida* v. *Riley* (1989) 488 U.S. 445 [102 L.Ed.2d 835, 109 S.Ct. 693] vitiates the trial court's rationale for granting the motion. We agree that *Riley* supports the People's position.[2]

■ In determining the Fourth Amendment constitutionality of aerial surveillance, the traditional two-part test of *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] is employed to see whether a person has a " 'constitutionally protected reasonable expectation of privacy.' " (*California* v. *Ciraolo* (1986) 476 U.S. 207, 211 [90 L.Ed.2d 210, 215, 106 S.Ct. 1809], quoting *Katz, supra,* 389 U.S. at p. 360 [19 L.Ed.2d at p. 587] (conc. opn. of Harlan, J.).) That test asks first whether the person has manifested a subjective expectation of privacy in the object of the challenged search, and second whether society is willing to recognize that expectation as reasonable. *(Ciraolo, supra,* at p. 211 [90 L.Ed.2d at p. 215].) It is *Katz*'s second prong that is in issue here.

■ In granting the defendant's motion to suppress, the superior court relied on *People* v. *Sabo* (1986) 185 Cal.App.3d 845 [230 Cal.Rptr. 170], for the clear-cut proposition that a helicopter surveillance flight over an individual's residential backyard at an altitude under 500 feet—as the court found here—violates that individual's reasonable expectation of privacy.

In *Sabo* a deputy sheriff in a helicopter hovered and circled approximately 400 to 500 feet above a residential backyard so as to allow another

---

[2] The superior court's finding that the officers observed the marijuana on defendant's property is supported by substantial evidence. We are therefore bound by this factual determination, which obviously confers standing to defendant. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]; *Rakas* v. *Illinois* (1978) 439 U.S. 128, 143 [58 L.Ed.2d 387, 400-402, 99 S.Ct. 421].) We do note that the People's theory of conviction did not require that the marijuana actually be on defendant's property. (Cf. *United States* v. *Issacs* (9th Cir. 1983) 708 F.2d 1365, 1367-1368.)

As we shall see, our resolution of this case renders unnecessary a discussion of the "open fields" doctrine.

deputy, riding as an observer, to spot marijuana plants growing in a partially covered greenhouse. (185 Cal.App.3d at p. 847.) The *Sabo* court found this activity violated the homeowner's reasonable expectation of privacy primarily because the helicopter was not in public navigable airspace as defined by Federal Aviation Administration (FAA) regulations governing minimum altitudes for fixed-wing aircraft and by the law of eminent domain. (*Id.,* at pp. 852-854.)

Subsequent to the suppression proceeding here, the United States Supreme Court rendered its decision in *Riley.* In *Riley,* the issue was whether a warrantless surveillance of the interior of a partially covered greenhouse in a residential backyard from a helicopter 400 feet above the greenhouse constituted a Fourth Amendment violation. (488 U.S. at pp. 447-448, 451-452 [102 L.Ed.2d at pp. 840, 843].) While the facts in *Sabo* and *Riley* are nearly identical, the two courts' emphases could not be more different.

For *Sabo,* the FAA regulation that helicopters may be legally flown under the minimum altitudes applicable to fixed-wing aircraft (1,000 feet over congested areas; 500 feet over noncongested areas)—so long as earthbound persons or property are not endangered (14 C.F.R. § 91.79(d) (1986); 14 C.F.R. § 91.79 (1988))—was an essentially irrelevant regulation. (185 Cal.App.3d at pp. 852-853.) For a *Riley* plurality of four, that regulation was the principal basis for their conclusion that there was no Fourth Amendment violation. (488 U.S. at pp. 451-452 [102 L.Ed.2d at pp. 842-843].) The *Riley* plurality reasoned that since helicopters are not bound by the lower limits of the navigable airspace specified for fixed-wing aircraft, any member of the public could legally have been flying in a helicopter above Riley's property at 400 feet and could have observed his greenhouse. (488 U.S. at pp. 450-451 [102 L.Ed.2d at p. 842].) Consequently, Riley's expectation of privacy was unreasonable. (*Id.,* at p. 453 [102 L.Ed.2d at p. 843].) In further support of this conclusion, the plurality noted there was nothing in the record to suggest that helicopters flying at 400 feet are so rare in this country that a helicopter surveillance from that elevation would not reasonably be anticipated. (*Ibid.*) Nor did the record disclose that the helicopter surveillance interfered with Riley's use of the greenhouse or yard, or revealed any intimate details involving the home or yard, or created any undue noise, wind, dust, or threat of injury. (*Ibid.*)

Justice O'Connor concurred in the plurality's judgment, agreeing that police observation of the greenhouse in Riley's curtilage from a helicopter passing at 400 feet did not violate an expectation of privacy " ' "that society is prepared to recognize as reasonable." ' " (488 U.S. at p. 452 [102 L.Ed.2d at p. 843].) Justice O'Connor, however, thought the plurality's approach rested the scope of Fourth Amendment protection too heavily on

compliance with FAA safety regulations. (*Ibid.*) To Justice O'Connor, Riley's expectation of privacy was unreasonable because there is "reason to believe" there is considerable public use of airspace at altitudes of 400 feet and Riley introduced no evidence to the contrary in the Florida courts. (488 U.S. at p. 455 [102 L.Ed.2d at p. 845].)

Although the dust has not entirely settled on the issue of helicopter aerial surveillance in light of *Riley*'s plurality status and multiplicity of opinions, this much is clear: five United States Supreme Court justices do not think that the warrantless surveillance of a residential backyard from a helicopter 400 feet in the air constitutes a per se violation of the Fourth Amendment simply because of the flight altitude. Accordingly, defendant's motion to suppress could not succeed merely on the basis that the superior court found the Butte County helicopter flew "[n]ot very much, but under" 500 feet when it reached defendant's residence.

In an attempt to avoid the fate of the defendant in *Riley*, the defendant here argues that he did establish the intrusiveness of the overflight, as well as the rarity of helicopters flying below 500 feet in the subject area. In support of this argument, defendant relies on his neighbor Molohon's testimony and on copies of two photographs taken by Huffaker during the overflight of defendant's residence.

Preliminarily, we reiterate that five justices in *Riley* did not think the Fourth Amendment was violated by a helicopter surveying at 400 feet a partially covered greenhouse located in a *residential* curtilage. All the evidence concerning the overflight of defendant's residence—Deputy Huffaker's observations, Sergeant Chaplin's altitude calculations, the topographic maps, and defense witness Brooks's photographic analysis—confirmed that the Butte County helicopter was *at least* 400 feet AGL at that site. And the aerial observations here did not involve peering through a partially covered greenhouse definitively in the curtilage, but encompassed views of marijuana openly growing in a natural vegetation area a significant distance from defendant's residence. Given this overview of the facts, it is difficult to see how defendant can use *Riley* to his advantage.

As to the intrusiveness of the overflight, neighbor Molohon did note one instance of a low-flying, loud, marijuana-surveillance helicopter over his property within a few weeks of defendant's arrest. But Molohon's property is over a quarter-mile from defendant's and about 200 feet higher in elevation. Moreover, in this area, marijuana-seeking helicopter overflights were a frequent phenomenon: there was no evidence linking Molohon's single observation to the subject flyover of defendant's property.

Regarding Huffaker's photographs, Huffaker contradicted defendant's assertion that they showed the helicopter was near tree top level. The defense expert Brooks opined that photos similar to Huffaker's photos were taken from an altitude near 450 feet AGL. Even defense counsel conceded in argument that Huffaker's photos were taken from at least 400 feet AGL.

Most significantly, defendant testified at the suppression hearing but said *nothing* about the intrusiveness of the overflight.

As in *Riley*, there is no evidence here that the helicopter surveillance over defendant's residence interfered with defendant's use of his property, or revealed intimate details connected with the use of his home or curtilage, or created any undue noise, wind, dust, or threat of injury.

In arguing the rarity of low-level helicopter flight, defendant relies on Molohon's testimony that the marijuana-surveying helicopters fly much lower than the logging-surveying ones, and in fact fly lower than any aircraft in the area. But this unsubstantiated testimony concerning only two types of helicopters and a very limited geographical area does little to meet the *Riley* plurality's test on this issue or Justice O'Connor's concurring view of the matter. The *Riley* plurality asks whether the evidence shows "that helicopters flying at 400 feet are sufficiently rare in this country to lend substance to [a defendant's] claim that he reasonably anticipated that his [property] would not be subject to observation from that altitude." (488 U.S. at pp. 451-452 [102 L.Ed.2d at p. 843].) Justice O'Connor looks for evidence contrary to the reasonable belief "that there is considerable public use of airspace at altitudes of 400 feet and above . . . ." (*Id.,* at p. 455 [102 L.Ed.2d at p. 845].)

Defendant's other basis for his motion to suppress—that Deputy Huffaker intentionally or recklessly misrepresented a fact in his search warrant affidavit when he stated the marijuana was observed from an altitude of not less than 500 feet AGL (*Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674])—is of no avail to him. Substantial evidence supports the superior court's determination that Huffaker negligently—rather than intentionally or recklessly—made the statement. (*Franks, supra,* at pp. 171-172 [57 L.Ed.2d at p. 682]; *People* v. *Leyba, supra,* 29 Cal.3d at pp. 596-597.)

We conclude defendant's motion to suppress was erroneously granted. (§ 1238, subds. (a) (7), (c).)

The order of dismissal and the order granting defendant's motion to suppress are reversed.

Puglia, P. J., and Davis, J., concurred.