Filed 11/4/14  P. v. Stanley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C073836 |
| v. | (Super. Ct. No. 12F5616) |
| GREGORY MARTEL STANLEY, | |
| Defendant and Appellant. | |

Defendant Gregory Martel Stanley challenges the trial court's denial of his motion to suppress evidence obtained pursuant to a search warrant.  Defendant contends the trial court erred in denying his motion on the basis that:  (1) there was not probable cause to issue the search warrant because (a) Deputy Crabtree misled the magistrate by failing to include in his affidavit that defendant had admitted to firing a shot at the victim using the Kahr nine-millimeter weapon, seized by officers when they arrested defendant and (b) the items described in the search warrant were not germane to the crime the officers were investigating; and (2) the hydrocodone and marijuana seized by the officers were not

items described in the search warrant. We conclude the trial court did not err and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Incident*

Michael Hatterle had been at a bar drinking alcohol most of the day on September 30, 2012. At approximately 1:30 a.m., Hatterle and defendant, who was a bartender at the bar, engaged in a heated political argument that resulted in defendant escorting Hatterle out of the bar. Once outside, defendant fired a handgun in Hatterle's direction and defendant's girlfriend assaulted Hatterle with a metal fence pole. Hatterle was apparently struck in the arm by the ricocheting bullet.

*The Investigation*

Hatterle reported the incident to the Calaveras County Sheriff's Department. At approximately 2:20 a.m. on October 1, 2012, Deputy Josh Crabtree was dispatched to the bar where he found a nine-millimeter spent shell casing and a metal pole. Deputies obtained a warrant to search the bar (bar warrant). At approximately 2:00 p.m., as sheriff's deputies drove toward the bar to execute the bar warrant, they observed defendant and his girlfriend approaching the bar. The deputies performed a traffic stop and arrested defendant for assault with a deadly weapon. Deputies seized from defendant a Kahr Arms nine-millimeter handgun and his cell phone. Defendant admitted using the Kahr nine-millimeter to shoot at Hatterle, and a records check indicated defendant also owned a Beretta nine-millimeter and a Glock ten-millimeter. Deputies found no other evidence relating to the incident at the bar when they executed the search warrant.

That evening, Crabtree obtained a search warrant for defendant's residence (search warrant). The search warrant application referred to and contained a copy of the bar warrant from earlier that day, and an affidavit from Crabtree. Crabtree averred he had seized defendant's Kahr nine-millimeter and cell phone pursuant to the traffic stop and the bar warrant, but deputies had not located defendant's other nine-millimeter handgun.

2

He opined there was probable cause to believe assault with a deadly weapon had been committed; defendant and witnesses fled the scene to avoid law enforcement following the shooting; defendant may have hidden his other nine-millimeter handgun; and defendant may have used his cell phone to make calls, send texts, or e-mail other witnesses to establish a protective story, alibi, or matching accounts. The search warrant application also represented that cell phones could be used to take and store photographic and video evidence.[1] The affidavit did not reference defendant's admission that he had fired at Hatterle using the gun deputies had seized.

The search warrant (signed at 9:00 p.m.) authorized deputies to search for cell phones, voice mail messages, and electronically stored data related to cell phone communications, including photographs and videos; items establishing dominion and control of the residence and items seized therein; any nine-millimeter handgun, ammunition, or related paraphernalia; and written communications or accounts of the shooting. Via telephone, Crabtree instructed the officers waiting outside defendant's home to execute the search. Deputies located the Beretta nine-millimeter, ammunition, and cell phone bills, and also discovered marijuana and hydrocodone pills in the residence. The hydrocodone was in a closed tin container measuring one-inch by one and one half-inch on the coffee table in the living room.

### Procedural Background

Defendant was charged with possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a) -- count one); willful and unlawful drawing and exhibition of a firearm in a rude, angry, and threatening manner (Pen. Code, § 417, subd. (a)(2)(A) --

---

[1] The application referred to capturing evidence of drug activity using cell phone cameras but there were no allegations of drug activity at the time. Since defendant did not object on this basis in the trial court, the contention is forfeited.

count two);[2] willful and unlawful carrying of a loaded firearm in public (§ 25850, subd. (a) -- count three); and possession of marijuana (Health & Saf. Code, § 11357, subd. (c) -- count four). After the court denied his motion to suppress evidence, defendant pled no contest to count one in exchange for a dismissal of all other counts. The court granted defendant probation for three years, sentenced him to serve 12 days in county jail, and awarded presentence custody credits of 12 days.

### *Evidentiary Motion*

Defendant moved to suppress evidence pursuant to section 1538.5 claiming the marijuana and hydrocodone found at his residence were obtained without probable cause and were not described in the search warrant.[3] Defendant claimed the search was a "fishing expedition" based on Crabtree's allegedly misleading affidavit because deputies already had all the evidence they needed in their possession prior to seeking the warrant: the Kahr nine-millimeter handgun; the spent shell casing; and defendant's admission he had fired the Kahr nine-millimeter at Hatterle.[4]

---

[2]     Undesignated statutory references are to the Penal Code.

[3]     Section 1538.5 provides, in pertinent part, that "[a] defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure" where "[t]he search or seizure with a warrant was unreasonable" because "[t]he property or evidence obtained is not that described in the warrant" or "[t]here was not probable cause for the issuance of the warrant." (§ 1538.5, subd. (a)(1).)

[4]     Defendant cited no authority beyond a perfunctory citation to section 1538.5, subdivision (a)(1)(A)(ii)-(iii), in support of his motion to suppress; nor did he present any evidence until the hearing on the motion (via cross-examination of deputies Crabtree and Gillespie and defendant's testimony). While the trial court may have attempted to divine defendant's meaning and unstated theories, we decline to make his arguments for him. (See *People v. Auer* (1991) 1 Cal.App.4th 1664, 1670 (*Auer*) [where the People are not placed on notice of a theory or contention in the defendant's motion to suppress that theory may not be raised on appeal].) Thus, defendant is limited to the unverified facts and unsupported arguments he actually raised in the trial court, delineated above. (§ 1538.5, subd. (a)(2) [motion must "set forth the factual basis and the legal authorities

4

The People opposed the motion, arguing the search warrant was supported by probable cause, and even if not, the officers could rely upon it in good faith. The People argued probable cause existed to believe the gun in defendant's possession at the time of his arrest was not the gun used in the incident because defendant owned another nine-millimeter gun. Also, defendant may have communicated with others via cell phone to coordinate an alibi or a favorable version of events in the half day between the incident and his arrest. The People also argued the drugs could be seized regardless of whether they were named in the search warrant because they were recognized as contraband. Deputy Josh Gillespie, who executed the search warrant, testified he opened the container that held the hydrocodone "looking for digital evidence" such as "SD cards, memory cards that can go into cameras or camcorders," believing they were included in the search warrant.

The trial court denied the motion, which it construed as a motion to quash the search warrant, to traverse the search warrant, and to suppress evidence obtained pursuant to the search warrant. It reasoned confessions may be the subject of suppression or may be recanted, and ballistics could have determined the Kahr nine-millimeter was not used to shoot at Hatterle. The court also found officers laid out the facts to the magistrate (except that defendant admitted the Kahr nine-millimeter was used in the incident), who decided there was probable cause to permit the search of defendant's residence for electronic equipment, ammunition, and firearms. The officers had a lawful right to open the closed container to look for microchips, SIM cards, or electronic equipment. The court further found there was no fault on the part of the officers in conducting the search. If there was fault, it was overcome by the good faith reliance theory set forth in *U.S.*

that demonstrate why the motion should be granted"]; *People v. Williams* (1999) 20 Cal.4th 119, 136 (*Williams*) [re: issues]; *People v. McKim* (1989) 214 Cal.App.3d 766, 768, fn. 1 (*McKim*) [re: facts]).

*v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677], which was cited by the People in their opposition.

DISCUSSION

I

***Motion to Quash or Traverse Warrant***

In determining whether probable cause exists to support a search warrant, the issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed. [Citation.]" (*Illinois v. Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 548].)

***Motion to Traverse Based on Alleged Material Omission***

Defendant contends the affidavit in support of the search warrant is insufficient because Crabtree misled the magistrate by omitting from his affidavit material information, namely defendant's admission that he had shot at Hatterle using the Kahr nine-millimeter seized from him when he was arrested. We conclude the affidavit is not insufficient because defendant failed to show the omission was material, or it was omitted recklessly, or with an intent to mislead the magistrate.

A defendant may challenge the veracity of a facially valid search warrant affidavit on the grounds it contains misrepresentations or omissions. (*Franks v. Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667]; *People v. Luttenberger* (1990) 50 Cal.3d 1, 11; *People v. Kurland* (1980) 28 Cal.3d 376, 384 (*Kurland*).) "[A]n affidavit may be insufficient when it omits facts adverse to the warrant application. [Citations.]" (*Kurland*, *supra*, at p. 384.) However, the affiant has a duty only to disclose facts that are material, meaning "only those omissions which significantly distort[] the probable cause analysis" will make an affidavit insufficient. (*Id.* at pp. 384-385.) Thus, "[o]n review under section

6

1538.5, facts must be deemed material . . . if, because of their inherent probative force, there is a substantial possibility they would have altered a reasonable magistrate's probable cause determination." (*Ibid.*)

If a trial court determines an asserted omission is material, it must then decide whether the omission "arose innocently or from culpable conduct." (*Kurland*, *supra*, 28 Cal.3d at p. 387.) A material omission will not render an affidavit insufficient if the affiant reasonably, even if incorrectly, concluded the omitted fact was immaterial. (*Id.* at pp. 388-389.) Thus, the defense first bears the burden of showing "with some specificity," why material facts were omitted and why those facts are material. (*Id.* at p. 390.) The People may show the material omission was proper or reasonable. (*Ibid.*) The defendant must then show the omission was the result of recklessness or the intent to mislead by the affiant. (*Ibid.*)

Here, including defendant's admission would not have undermined the probable cause showing. This omission was unlikely to influence the magistrate's probable cause determination because confessions are frequently the subject of motions to suppress or are recanted, ballistics may have established defendant lied about using the Kahr nine-millimeter, and officers knew defendant had another nine-millimeter gun. Indeed, defendant left the bar prior to Crabtree's arrival at 2:20 a.m. and did not contact law enforcement in the nearly 12 hours before his arrest. It would be reasonable for a magistrate to conclude there was probable cause that defendant's other nine-millimeter gun, which was located at his home, was used to commit the crime despite defendant's admission, and that defendant had communicated with witnesses (other bar patrons) and his girlfriend to coordinate their factual recollections of the incident. Thus, defendant failed to establish the omission was material.

Even if we were to assume the omission was material, defendant did not establish Crabtree omitted defendant's admission from his affidavit recklessly or with an intent to mislead the magistrate. The only assertion defendant made to establish "recklessness or

7

intent to mislead," was that Crabtree knew of the admission.[5] Crabtree testified at the suppression hearing that he did not credit defendant's admission because he had an obligation to find out if defendant actually committed the crime, and suspects "lie to [him] every day." The mere fact Crabtree knew of defendant's admission is not sufficient to demonstrate he acted with reckless disregard for the truth or intent to mislead in omitting the admission from his affidavit. (See *Kurland*, *supra*, 28 Cal.3d at p. 387 ["Intentional omissions . . . are not necessarily an effort to mislead the magistrate. [Fn. omitted.] They may arise from a correct, or at least reasonable, conclusion that the omitted facts were immaterial or privileged"].)

Accordingly, we conclude the trial court did not err in denying defendant's motion to the extent it construed the motion as a motion to traverse the search warrant.

### Motion to Quash Based on Alleged Irrelevance

Having concluded the affidavit did not mislead the magistrate due to material omissions undermining the probable cause showing, we turn to defendant's contention the search warrant was not supported by probable cause because the items described therein were not germane to the investigation of the reported crime. The crux of defendant's argument appears to be that once the deputies had the Kahr nine-millimeter, the spent shell casing from the bar, and defendant's admission, the case was solved and anything described in the search warrant was no longer germane to the investigation of the incident.[6] Defendant cites no authority to support this proposition, and we find none.

---

**5** Defendant also claimed, without evidentiary support, Crabtree knew defendant's girlfriend was the former wife of a former sheriff's deputy in the county. The trial court apparently disregarded this claim, and without any evidence to support the claim in the record, so do we. (*McKim*, *supra*, 214 Cal.App.3d at p. 768, fn. 1.)

**6** To the extent defendant contends law enforcement officers could not search for any cell phone related information because deputies had seized defendant's cell phone when they arrested him, he cannot raise that contention on appeal because he failed to

8

Defendant's argument would require us to accept that once defendant admitted shooting at Hatterle using the Kahr nine-millimeter, the deputies had to believe him and could not continue their investigation. If that were the case, whenever any suspect confessed, truthfully or not, the investigation of the alleged crime would stop, and officers would be unable to corroborate the suspect's confession or to find other evidence relating to the crime. This is contrary to the truth-seeking function criminal investigation and prosecution must pursue. The trial court did not err in denying the motion on this basis.

A defendant seeking to quash a search warrant has the burden of establishing its invalidity. (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 101.) The trial court must determine "whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing. [Citations.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him [or her], there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041.) "The magistrate's determination of probable cause is entitled to deferential review. [Citations.]" (*Id.* at p. 1041.)

Here, the magistrate found there was probable cause to believe the items described therein were at defendant's home and were "lawfully seizable." The reviewing court found the "[o]fficers were armed with the information [defendant] had other firearms, including a nine-millimeter in his possession," the nine-millimeter was in defendant's home, confessions are frequently recanted or the subject of motions to suppress, and the search warrant was limited to specific information and not to conduct a general exploratory search. It thus affirmed the magistrate's finding this provided probable cause

---

raise it in his motion to suppress evidence. (*People v. Williams*, *supra*, 20 Cal.4th at p. 136.)

to support the search warrant.  Based on the evidence before us, we agree there was probable cause to issue the search warrant.

Accordingly, we conclude the magistrate did not err in finding probable cause to issue the search warrant, and the trial court did not err in denying defendant's motion to quash.

## II

### *Motion to Suppress*

In his motion to suppress, defendant contended the hydrocodone pills should be suppressed because they were not described in the search warrant.[7]  The People argued the pills could be seized as recognized contraband when they came into plain view of the searching officer.  Defendant argued the officers "went searching through boxes until they found something" because they did not find any electronics.  We conclude the officer acted reasonably in opening the container where the pills were discovered.

A defendant may move to suppress evidence obtained as the result of an unreasonable search or seizure.  (§ 1538.5, subd. (a)(1)(A)-(B).)  In reviewing the trial court's denial of a suppression motion, we consider the record in the light most favorable to the trial court's ruling and defer to the trial court's factual findings, if supported by substantial evidence.  (*People v. Tully* (2012) 54 Cal.4th 952, 979.)  Any conflicts in the evidence are resolved in favor of the trial court's order.  (*People v. Limon* (1993) 17 Cal.App.4th 524, 529.)  We exercise our independent judgment to determine whether,

---

[7]     On appeal, defendant argues the search of the tin container was unauthorized because Gillespie testified he was looking for "SD cards, memory cards that can go into cameras or camcorders" when he opened the tin container and cell phones and cell phone information (as opposed to cameras or camcorders) were authorized by the search warrant.  However, as we have repeatedly noted, defendant cannot make this argument for the first time on appeal.  (See *Auer, supra,* 1 Cal.App.4th at pp. 1664, 1670; *Williams, supra,* 20 Cal.4th at pp. 119, 136.)

on the facts found, the search or seizure was reasonable under the Fourth Amendment of the United States Constitution.  (*Tully*, *supra*, 54 Cal.4th at p. 979.)

"[W]hen a search is made pursuant to a warrant, the search and seizure are limited by the terms of the warrant.  Only the premises described in the warrant may be searched, and only the property described in the warrant may be seized . . . .  [Citation.]"  (*People v. Williams* (1988) 198 Cal.App.3d 873, 888.)  However, contraband " 'falling in the plain view of an officer who has a right to be in a position to have that view [is] subject to seizure and may be introduced in evidence.'  [Citation.]"  (*Ibid.,* quoting *Harris v. United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069]; see also *People v. Diaz* (1992) 3 Cal.4th 495, 563 [officers could seize lidocaine found in bedroom closet while looking for documents listed in the warrant because it came into plain sight as a result of their efforts].)  Additionally, we "examine the lawfulness of a search under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.  [Citation.]"  (*People v. Carrington* (2009) 47 Cal.4th 145, 168.)  We "simply ask[] 'whether the police confined their search to what was permitted by the search warrant.'  [Citation.]"  (*Ibid*.)  Thus, the only question before us is whether it was reasonable for Gillespie to look in the container.

Here, the search warrant included as items that could be seized, "Cell phones, Voice mail messages any and/or all electronically stored data, including but not limited to, the assigned cellular telephone number, e-mail address, names and/or nicknames and associated telephone numbers listed in the 'Phone Book' or 'Contacts', dates, times and telephone numbers of recent call activity, text messages, photographs and videos."  The trial court found the container Gillespie opened "appear[ed] to be someplace where electronic equipment could have been concealed" and deputies "had a lawful right to open up closed containers within the house to look for microchips or SIM cards or something along those lines."  Substantial evidence supports this finding.  Accordingly, we conclude Deputy Gillespie acted lawfully when he opened the container looking for

"digital evidence," and it was proper for the trial court to deny the motion to suppress evidence located therein.

In sum, the trial court did not err in denying defendant's motion to suppress evidence, to quash the search warrant, and to traverse the search warrant.

DISPOSITION

The judgment is affirmed.


      HOCH     , J.


We concur:


     BLEASE   , Acting P. J.


     BUTZ    , J.