Filed 1/26/23  P. v. Lowe CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RUSSELL LEE LOWE, <br><br> Defendant and Appellant. | F082437 <br><br> (Super. Ct. Nos. F20902508, F19905894) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. David Andrew Gottlieb, Judge.

Kathleen Sherman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Russell Lee Lowe was convicted by jury of felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1)) and felon in possession of a short-barreled rifle or shotgun (§ 33215). Lowe admitted he had suffered a prior strike conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and the trial court found Lowe in violation of his probation in case No. F19905894. The trial court sentenced Lowe to a prison term of two years eight months. Lowe's motion for constructive filing of his notice of appeal and consolidation of cases was granted by this court.

On appeal, Lowe contends: (1) the trial court erred in denying his motion to suppress (§ 1538.5); (2) the trial court abused its discretion by declining to strike his prior strike conviction following consideration of his *Romero*[2] motion; and (3) the trial court erred by imposing a $300 restitution fine (§ 1202.4) after determining Lowe lacked the ability to pay the court facilities assessment (Gov. Code, § 70373) and the court operations assessment (§ 1465.8), or alternatively, trial counsel committed ineffective assistance of counsel by failing to object to imposition of the restitution fine. We affirm.

## PROCEDURAL HISTORY

On August 12, 2020, the Fresno County District Attorney's Office filed an information charging Lowe with felon in possession of a firearm (§ 29800, subd. (a)(1), count 1); felon in possession of a short-barreled rifle or shotgun (§ 33215, count 2); carrying a concealed firearm, with a special allegation that Lowe was not the registered owner of the concealed weapon and that it was loaded or ammunition was readily available (§§ 25400, subds. (a)(2), (c)(6), count 3); and carrying a loaded firearm in

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

public, with a special allegation that Lowe was not the registered owner of the loaded weapon (§§ 25850, subds. (a), (c)(6), count 4). The information further alleged that Lowe had suffered a prior serious felony conviction (§§ 667, subds. (b)-(i) &1170.12, subds. (a)-(d)), and that he had violated his probation in case No. F19905894.

On September 22, 2020, Lowe filed a motion to suppress pursuant section 1538.5. The District Attorney filed a brief in opposition.

On October 28, 2020, following a contested hearing, the trial court denied Lowe's motion.

On December 4, 2020, count 4 and the special allegation alleged in count 3 were dismissed on the prosecution's motion.

On December 7, 2020, a jury found Lowe guilty of felon in possession of a firearm (§ 29800, subd. (a)(1)) and felon in possession of a short-barreled rifle or shotgun (§ 33215). The District Attorney dismissed count 3.

On February 4, 2021, the trial court denied Lowe's *Romero* motion. The trial court sentenced Lowe to a prison term of two years eight months on counts 1 and 2, which represents the low term of 16 months, doubled for Lowe's prior strike. Lowe's sentence on count 2 was stayed pursuant to section 654. The trial court sentenced Lowe to a prison term of two years on his probation violation (case No. F19905894), to run concurrently with his sentence in the instant case.

At sentencing, the trial court imposed a $300 parole revocation restitution fine (§ 1202.4), and a matching restitution fund fine (§ 1202.45), which was stayed. However, the court declined to impose a court operations fee (§ 1465.8) and a criminal conviction fee (Gov. Code, § 70373) based upon Lowe's "inability to pay."

On February 23, 2021, Lowe filed a notice of appeal, identifying only case No. F20902508.

3.

On August 24, 2021, this court granted Lowe's motion for constructive filing of notice of appeal and for consolidation of his cases on appeal, deeming the notice of appeal to include case No. F19905894.

## STATEMENT OF FACTS

The following statement of facts is derived from testimony adduced at the hearing on Lowe's motion to suppress:[3]

On April 15, 2020, at approximately 9:35 a.m., Officers Robert Saenz and Drew Vanzant with the Fresno Police Department were on patrol in the area of Voorman Avenue and Divisadero Street in Fresno. The area is a high crime area, known for drinking, theft, property crimes, and vehicle thefts, which Officer Saenz had personally encountered during his patrols.

The officers observed a Honda Civic parked in a dirt field behind Lum's Chinese Restaurant, which was closed. Officer Vanzant testified that the Honda was parked illegally because "[i]t wasn't parked in the stalls. It was just parked in the middle of the dirt area." The parking lot was vacant and no one appeared to be around. The vehicle was occupied.

As they were pulling up to the vehicle, Officer Vanzant conducted a computer search of the vehicle's license plate through the California Department of Motor Vehicles, which showed the Honda's registration was expired.[4] Before they stopped their patrol vehicle, Officer Saenz observed Lorena Ledesma exit the driver's side of the

---

**3**    In considering the merits of the trial court's ruling on Lowe's motion to suppress, our review is limited to the evidence before the court when it considered the motion. (*People v. McKim* (1989) 214 Cal.App.3d 766, 768, fn. 1.)

**4**    Officer Vanzant testified that Officer Saenz activated his emergency lights, but he could not remember whether this occurred before or after discovering that the Honda's registration was expired. Officer Saenz testified that he did not activate his emergency lights.

4.

vehicle.  Officer Saenz had numerous prior contacts with Ledesma.  He explained Ledesma is a habitual alcoholic and he frequently has to instruct her to move along and not drink in the alleyway.  He stated that Ledesma is also a known transient who does not own a vehicle.  The officers also observed a man bent over and halfway inside the floorboard area of the front passenger's side of the vehicle with his legs outside of the vehicle.

Officer Saenz exited his patrol vehicle and contacted the vehicle's occupants to determine whether the vehicle was stolen.  Officer Saenz testified that based upon his training and experience, Honda vehicles are among the most commonly stolen vehicles in the City of Fresno.  According to Officer Saenz, Honda vehicles are particularly susceptible to the use of shaved keys and their ignitions can be easily overridden.

Officer Vanzant approached the passenger side of the vehicle and contacted the male occupant.  The man identified himself as Russell Lowe.  Lowe was unable to furnish his identification.

Officer Saenz immediately recognized Lowe from a prior contact.  He knew that Lowe was on probation, but he could not recall Lowe's name.  Officer Saenz ran Lowe's name through the computer in his patrol vehicle, which permits authorized users to check on the probation status and provides other notes for a given individual through the Fresno County Probation Department's website.  He confirmed that Lowe was in fact on probation and was "open to search and seizure."

Officer Vanzant also testified that consistent with his regular practice, he ran Lowe's name and date of birth through dispatch and learned that Lowe was on felony probation for dissuading a witness.

Based upon Lowe's probation search condition, the officers conducted a search of the Honda to determine whether Lowe was complying with the terms of his probation.  Officer Vanzant stayed with Lowe and the two female occupants of the vehicle at the rear

5.

of the Honda, while Officer Saenz conducted a search of the front passenger seat area of the vehicle. Officer Saenz searched a black backpack sitting on top of the front passenger's seat, which was within arm's reach of Lowe.

Inside the black backpack, Officer Saenz found a .20-gauge sawed-off shotgun and three shotgun shells. Lowe admitted the contents of the backpack, which also included male clothing, were his.

Lorraine Rodriguez, the registered owner of the Honda, was present. She did not object to Lowe's presence in the vehicle.

During the hearing, the trial court took judicial notice of case ending "894" as further evidence of the fact that Lowe was on probation at the time of the search.

***The Trial Court's Ruling***

On October 28, 2020, following a contested hearing, the trial court denied Lowe's motion to suppress, stating:

> "[THE COURT:] Having taken that all into consideration, the Court does find that the People have met their burden of proof in this matter. I would note that there was a reasonable suspicion of criminal activity based upon the totality of the circumstances known to the officers as testified to, specifically testimony that this was a high crime area, that at least one of the officers was aware of one of the individuals by the vehicle as a transient person, that the vehicle was, even if parked legally, was in a parking lot of a closed business, the passenger door of the vehicle was open with a person leaning into the vehicle, and that the vehicle is one known to the officers to be a target of theft, susceptible of theft. Upon first contact the officer may not have known the defendant's name, but was aware of the defendant and believed from prior contacts that the defendant was a person on probation and that he confirmed that fact after running the defendant's name, apparently confirmed the fact that he was on probation and under search and seizure conditions. And therefore, based upon the totality of all of that, the Court does not find that there's been any illegal detention, arrest, search or seizure in this matter which would be subject to suppression and the

6.

suppression motion is denied on each of the grounds raised by the defense."

## ANALYSIS

### I.     The Denial of Lowe's Motion to Suppress

Lowe contends the trial court erred in denying his motion to suppress.  We conclude the detention and search were lawful under the Fourth Amendment.

#### A.     Standard of Review

A defendant who brings a motion to suppress has the initial burden of proving a warrantless search or seizure occurred.  (*People v. Flores* (2019) 38 Cal.App.5th 617, 626.)  "There was no warrant in this case, so the burden shifted to the prosecution to show any warrantless searches or seizures were justified under the Fourth Amendment to the United States Constitution....  '[T]he controlling burden of proof at suppression hearings ... [is] proof by a preponderance of the evidence.'  (*United States v. Matlock* (1974) 415 U.S. 164, 178, fn. 14 ....)"  (*Ibid.*)

In reviewing the denial of a suppression motion, we "view the evidence in a light most favorable to the order denying the motion to suppress" and " ' "must accept the trial court's resolution of disputed facts and its assessment of credibility." ' "  (*People v. Frederickson* (2020) 8 Cal.5th 963, 1010.)  "[W]hile we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found."  (*People v. Woods* (1999) 21 Cal.4th 668, 673-674; *People v. Glaser* (1995) 11 Cal.4th 354, 362; *People v. Lomax* (2010) 49 Cal.4th 530, 563.)  "Where there are no express findings of fact, we imply whatever findings are necessary to support the order."  (*People v. Flores* (2021) 60 Cal.App.5th 978, 988.)

#### B.     Reasonable Suspicion to Detain

Lowe claims Officers Saenz and Vanzant lacked reasonable suspicion to detain him.  Viewing the facts in the light most favorable to the trial court's ruling, as we must

7.

(*People v. Frederickson, supra,* 8 Cal.5th at p. 1010), we conclude the detention was supported by reasonable suspicion.

### 1. Legal Principles

"The Fourth Amendment to the United States Constitution prohibits seizures of persons, including brief investigative stops, when they are 'unreasonable.' (*Terry v. Ohio* (1968) 392 U.S. 1, 19 & fn. 16 ....) Our state Constitution has a similar provision. (Cal. Const., art. I, § 13.)" (*People v. Souza* (1994) 9 Cal.4th 224, 229.)

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *(United States v. Sokolow* (1989) 490 U.S. 1, 7 (*Sokolow*).) "[T]he detaining officer [must] point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Souza, supra*, 9 Cal.4th at p. 231.) "The officer's ... suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

### 2. Analysis

The trial court found the following facts justified reasonable suspicion to detain Lowe: (1) the Honda was parked in a high crime area; (2) one of the individuals in the vehicle was a known transient person; (3) the Honda was parked in the lot of a closed business; (4) the passenger's side door of the Honda was open with a person leaning into the vehicle; (5) in the officers' experience, Honda's are frequently targeted for vehicle theft.

The precise sequence of events between the officers' initial observation of the Honda and their contact with Lowe is unclear from the record. Although the trial court determined that a detention had occurred, the trial court never explicitly determined when the detention commenced. However, based upon the trial court's factual findings, and in light of the court's ruling denying Lowe's motion to suppress, we can infer that the trial court found that a detention commenced at some point following the observation of facts which would justify reasonable suspicion to believe the Honda was stolen or was being stolen.

Following our review of the record, we conclude that Officers Saenz and Vanzant pointed to a set of articulable facts, which taken together, could objectively cause an experienced officer to conclude that Lowe and his companions were engaged in criminal activity, specifically, vehicle theft. As Officer Saenz and Vanzant were driving their patrol vehicle, they observed a Honda parked in the dirt lot of a closed business, where no one else was present, with a man bent over the passenger's side floorboard. Further, a woman known to officers not to have owned a vehicle was seen exiting the driver's side of the Honda. Officer Saenz testified that from his experience, the Honda was parked in a high crime area that is known for vehicle thefts, and Honda vehicles are among the most commonly stolen vehicles in the City of Fresno. Giving due weight to factual inferences drawn by the trial court judge and the law enforcement officers (*Ornelas v. United States* (1996) 517 U.S. 690, 699), we conclude that these facts established reasonable suspicion to support the detention.

In reaching our conclusion, we are guided by the well-established standard required to support a finding of reasonable suspicion. Reasonable suspicion requires " 'some minimal level of objective justification' " that consists of "more than 'inchoate or unparticularized suspicion or "hunch," ' " but "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that necessary for probable cause." (*Sokolow, supra,* 490 U.S. at p. 7.) Upon these facts,

9.

we are persuaded that Officers Saenz and Vanzant were acting on more than an " 'inchoate or unparticularized suspicion or "hunch" ' " (*ibid.*) when they detained Lowe.

Lowe contends the officers lacked reasonable suspicion to detain him for the following reasons: (1) the officers did not initiate the detention because the Honda's registration was expired; (2) the officers did not discover the vehicle's registration was expired until after the detention had commenced; (3) there are no facts in the record establishing that the Honda was illegally parked; (4) the officers lacked reasonable suspicion to believe that the Honda was stolen; and (5) the fact that the area where the encounter occurred was a high crime area was insufficient, without more, to justify the detention.

Lowe's first, second, and third claims pertain to whether the officers had reasonable suspicion or probable cause to detain him based upon an observed violation of the Vehicle Code. Because the trial court did not expressly or implicitly resolve contested facts which would permit us to determine whether the detention was justified on this basis, we do not reach this issue.

For example, the trial court did not determine whether Officers Saenz and Vanzant activated their emergency lights and siren during the encounter, and if so, whether they did so before or after discovering the Honda's registration was expired. " '[T]he Supreme Court has long recognized that activating sirens or flashing lights can amount to a show of authority.' " (*People v. Tacardon* (Dec. 29, 2022, No. S264219) ___Cal.5th___ [2022 Cal. LEXIS 7809, at *10] quoting *People v. Brown* (2015) 61 Cal.4th 968, 978.) However, merely parking a patrol car behind a suspect will not convert an encounter into a detention as long as the suspect's path is not blocked.[5] (*People v. Kidd* (2019) 36 Cal.App.5th 12, 21 ["Without more, a law enforcement officer simply parking behind a defendant would not reasonably be construed as a detention"],

---

[5] Contrary to Lowe's assertion in his reply brief, there is no evidence that the Honda's pathway was blocked.

disapproved on other grounds by *People v. Tacardon*; *People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [same].) Similarly, "interrogation relating to one's identity ... does not, by itself, constitute a Fourth Amendment seizure." (*INS v. Delgado* (1984) 466 U.S. 210, 216; see, e.g., *People v. Leath* (2013) 217 Cal.App.4th 344, 353 ["voluntary relinquishment of a [suspect's] identification card does not constitute a seizure as long as the encounter is consensual under the totality of the circumstances"].)

Nor did the trial court determine whether the Honda was illegally parked. Its ruling was predicated upon the assumption that the Honda was legally parked. In concluding that reasonable suspicion supported the detention, we presume the Honda was legally parked as well, as the record does not contain sufficient evidence to conclude otherwise. Thus, Lowe's first, second, and third claims fail to advance his argument.

As to Lowe's fourth claim, that the officers lacked reasonable suspicion to believe the Honda may have been stolen because of the absence of certain factors, the absence of factors cited by Lowe did not convert the encounter into an unconstitutional detention. Lowe specifically contends Officers Saenz and Vanzant lacked reasonable suspicion because there was no report of a recently stolen vehicle, Ledesma was not a known car thief, and even if Ledesma had been observed driving the vehicle, it is not a crime to drive a vehicle owned by someone else. While the presence of any of these factors would have bolstered the officers' suspicion that legal wrongdoing was occurring, the absence of these factors does not mean the officers necessarily lacked reasonable suspicion.

As our Supreme Court explained in *Sokolow, supra,* 490 U.S. 1 at pages 7 through 8: "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' " Thus, whether an officer possessed reasonable suspicion to justify a detention is evaluated on a case-by-case basis in light of the totality of the circumstances. (*Souza, supra*, 9 Cal.4th at p. 231.)

We acknowledge that the circumstances observed by Officers Saenz and Vanzant prior to detaining Lowe are also consistent with an innocent explanation. As Lowe correctly observes, it is not a crime to drive a vehicle owned by someone else. However,

11.

"[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct." (*In re Tony* C. (1978) 21 Cal.3d 888, 894; *Illinois v. Wardlow* (2000) 528 U.S. 119, 126 ["*Terry* accepts the risk that officers may stop innocent people"].)

In his final claim challenging the detention, Lowe contends that the facts presented fail to establish that criminal activity was occurring. According to Lowe, in addition to testimony about the fact that the area was a high crime area, "[t]he officers also testified … that Ms. Ledesma was a transient and a habitual alcoholic who had frequently been told to 'move along,' the Honda was parked in the parking lot of a closed business, and Mr. Lowe was leaning into the car."[6] We have already recited the factors which we find supplied the officers with reasonable suspicion to detain Lowe, and therefore, do not repeat them.

Lowe submits that an officer's opinion that a location is a "high crime area" does not give rise to reasonable suspicion of criminal activity. If this were the only factor relied upon by Officers Saenz and Vanzant in detaining Lowe, we would agree that the detention was not supported by reasonable suspicion. Standing alone, a suspect's mere presence in a high crime area is insufficient to justify a detention. (See, *People v. Loewen* (1983) 35 Cal.3d 117, 124 [An " 'officer's assertion that the location lay in a "high crime" area does not elevate ... facts into a reasonable suspicion of criminality' "]; *People v. Gallant* (1990) 225 Cal.App.3d 200, 210 ["the existence of a high-crime area may be a factor to consider, but it cannot be the sole factor"]; *People v. Medina* (2003) 110 Cal.App.4th 171, 178 [same].) However, Lowe was not detained based solely upon his presence in a high crime area. Indeed, the fact that the Honda was observed in a high

---

**6** Officer Saenz further testified that Ledesma was exiting the driver's side of the vehicle, but he knew she did not own a vehicle, a fact which is far more relevant to our analysis than Ledesma's status as a transient person. Although the trial court did not expressly credit Officer Saenz's statement, "we imply whatever findings are necessary to support the order." (*People v. Flores, supra,* 60 Cal.App.5th at p. 988.)

crime area was only one of the relevant contextual considerations in the officers' decision to investigate its presence in the dirt lot.

Under the totality of the circumstances, we conclude the officers had a reasonable suspicion that Lowe was involved in criminal activity. Therefore, the detention of Lowe was constitutionally permissible.

### C.    The Search of Lowe's Backpack

#### 1.    Legal Principles

"In California, probationers consent in advance, as a condition of their probation, to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term.... [¶] A probationer's consent is considered 'a complete waiver of that probationer's Fourth Amendment rights, save only his right to object to harassment or searches conducted in an unreasonable manner.' " (*People v. Medina* (2007) 158 Cal.App.4th 1571, 1575-1576.) "Accordingly, the California Supreme Court has held that a search of a probationer pursuant to a search condition may be conducted *without any reasonable suspicion of criminal activity* and that such a search does not violate the Fourth Amendment." (*Id.* at p. 1577; *People v. Bravo* (1987) 43 Cal.3d 600, 607-609).)

The general rule is that "a search conducted pursuant to a known probation search condition, even if conducted without reasonable suspicion of criminal activity, does not violate the Fourth Amendment as long as the search is not undertaken for harassment or for arbitrary or capricious reasons or in an unreasonable manner." (*People v. Medina*, *supra*, 158 Cal.App.4th at p. 1577; *People v. Cervantes* (2002) 103 Cal.App.4th 1404, 1408 ["[i]t is only when the motivation for the search is wholly arbitrary, when it is based merely on a whim or caprice or when there is no reasonable claim of a legitimate law enforcement purpose, e.g., an officer decides on a whim to stop the next red car he or she sees, that a search based on a probation search condition is unlawful"].) Prior to undertaking a probation search, "the officer must have some knowledge not just of the

13.

fact someone is on probation, but of the existence of a search clause broad enough to justify the search at issue." (*People v. Douglas* (2015) 240 Cal.App.4th 855, 863.)

### 2. Analysis

Officer Saenz testified that he immediately recognized Lowe and that he knew Lowe was on probation, but he could not recall his name. He conducted a computer search of Lowe through his patrol vehicle's computer, confirmed Lowe's probation status, and that he was "open to search and seizure." Officer Saenz conducted a search for purposes of confirming that Lowe was complying with the terms of his probation. He searched the Honda and the black backpack sitting on the front passenger's seat, which was within arm's reach of Lowe during their initial encounter with him.

We conclude that the search of the Honda was authorized as a condition of Lowe's probation. Officers Saenz and Vanzant knew Lowe was on probation, and that he was subject to a search condition prior to performing their search. They performed a search to determine whether Lowe was complying with the terms of his probation, which is permissible. (*In re Marcellus L.* (1991) 229 Cal.App.3d 134, 140 ["the standard California probation clause is a valid state practice calculated to respond to the special needs of our probation system by enabling probation officers and others to monitor the probationer's progress and compliance with the terms of probation"].) We detect no constitutional infirmity upon these facts.

Lowe claims the prosecutor failed to adduce evidence establishing that the scope of the search clause was broad enough to include a search of the backpack. He directs this court to *People v. Romeo* (2015) 240 Cal.App.4th 931 (*Romeo*), which he asserts, demonstrates that the search of his backpack was not shown to be within the scope of the search authorized as a condition of his probation.

The Attorney General does not directly address *Romeo*. Rather, he contends that the reasonable inference to be drawn from Officer Saenz's testimony is that he was aware

14.

that Lowe's probation search condition was not limited in scope. We have no doubt that Officer Saenz subjectively understood that the scope of the probation search condition permitted him to search not only Lowe, but items within Lowe's control.[7] However, the issue raised by Lowe pertains to whether Officer Saenz's subjective belief was objectively reasonable.

In *Romeo, supra*, 240 Cal.App.4th at pages 951 through 952, our colleagues in the First District, Division 4 Court of Appeal concluded that because "*a search pursuant to a probation search clause may not exceed the scope of the particular clause relied upon*" (*id.* at p. 954) and, because probation search terms vary in scope, "mere knowledge that someone is on probation and subject to search, without more, may be insufficient where there is a challenge to the search." (*Id.* at pp. 951-952.) The issue in *Romeo* was that the appellate court could not determine whether the officer's subjective belief that the probationers had consented to a search of their residence was *objectively reasonable*, because the terms of the probation order's search clause were never introduced at the suppression hearing. (*Id.* at p. 955.)

The appellate court explained, "there is nothing in the record to aid an objective evaluation of the scope of advance consent that was given. We do not know whether the authorized scope of search extended just to the persons of [the probationers], or to all property under their control as well; and if it did extend to their property, we do not know whether it extended specifically to their residence. Nor do we know whether a search was authorized for any particular kind of contraband." (*Romeo*, *supra*, 240 Cal.App.4th at pp. 950-951, fn. omitted.)

We agree with *Romeo's* holding. A search authorized and performed as a condition of a subject's probation status is predicated upon consent. While the People are

---

**7** Lowe does not challenge whether the officers subjectively understood that the scope of his search condition authorized a search of his property.

15.

not required to present the probation order itself (*Romeo, supra*, 240 Cal.App.4th at p. 952), there must be some showing by the People that the search performed fell within the scope of the probationer's consent, i.e., the search condition. As *Romeo* observed, presentation of the search clause would suffice, as would more detailed testimony from the officer "showing some understanding of the operative terms of probation and connecting those terms to the need for a warrantless search." (*Id.* at p. 955.)

The instant case is factually distinguishable from *Romeo*. Unlike *Romeo*, where judicial notice was never requested (see, *Romeo, supra*, 240 Cal.App.4th at p. 951, fn. 14), the trial court here took judicial notice of the court file from Lowe's probation case without objection by Lowe. We presume the court file in Lowe's probation case (case No. F19905894), was before the trial court at the time of the suppression hearing.

The minute order from the February 7, 2020 sentencing hearing in Lowe's probation case is part of the record on appeal, as is the probation officer's report which recites the conditions of Lowe's probation. The minute order shows that Lowe was placed on formal probation for a period of three years for "attempts to prevent or dissuade any witness or victim from attending or giving testimony." (Unnecessary capitalization omitted.) The search term is noted in the minute order: "*Submit person and property to search and seizure*." Thus, the officers' subjective belief that the search of Lowe's backpack was authorized by the probation search condition was objectively reasonable.

Lowe asserts the officers did not know whether the backpack actually belonged to him until after they searched its contents. However, whether the backpack actually belonged to Lowe is irrelevant.

The concept of " ' "control" ' " means only " 'mere physical access,' " not " 'ownership, possession, or authority over the property searched.' " (*People v. Schmitz* (2012) 55 Cal. 4th 909, 928; *People v. Cervantes* (2017) 11 Cal.App.5th 860, 866-867,

870-871 [extending *Schmitz* to vehicular searches incident to a passenger's probation status].)

The backpack was sitting on top of the front passenger's seat. Officers Saenz and Vanzant had observed Lowe bent over the front passenger's side floorboard as they pulled their patrol vehicle behind the Honda. The backpack was sitting on top of the front passenger's seat, within arm's reach of Lowe. Given the proximity of the backpack to Lowe, it was reasonable for the officers to conclude that Lowe had physical access to it, and therefore, that it was subject to the search condition.

## II. The Trial Court Did Not Abuse its Discretion by Declining to Strike the Prior Strike

Lowe argues the trial court abused its discretion by denying his *Romero* motion for the following reasons: (1) the trial court considered facts not in the record, such as his lack of success in court-ordered treatment programs; (2) the court engaged in speculation by concluding that a methamphetamine user may be the type of person that would be more likely to use a weapon; (3) the trial court improperly considered Lowe's conduct as a juvenile and a young adult; and (4) the trial court erroneously believed that extraordinary discretion was required to strike the prior strike conviction.

We conclude that although reasonable minds could disagree as to whether the circumstances presented call for striking Lowe's prior strike conviction, "[i]t is not enough that reasonable people disagree about whether to strike a prior conviction." (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1140.) Because the record does not support Lowe's assertions of error, and in light of the fact that the instant case is not one "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme" (*ibid*.), Lowe has failed to demonstrate the trial court abused its discretion by denying his *Romero* motion.

### A.    Background

On January 11, 2021, Lowe filed a *Romero* motion, inviting the court to exercise its discretion to strike his prior strike conviction.  In his motion, Lowe provided details of his troubled childhood, which involved physical abuse by a cousin, an absent father, and a difficult relationship with his mother.  As a result of issues arising in his youth, he became involved with juvenile probation.  Lowe also detailed a significant history of substance abuse, including the use of methamphetamine, which he began using at the age of 19.  Lowe stated that he quickly became addicted to methamphetamine, that he began using it daily, and that he had last used it on the day of his arrest.

Lowe referenced his prior participation in two treatment programs, but acknowledged he was unable to complete one of those programs because of the birth of his daughter.  Prior to his arrest, Lowe had participated in Turning Point, a mental health program, but it is unclear whether he completed the program.

At the hearing on Lowe's *Romero* motion, trial counsel made an impassioned plea to the court to strike Lowe's prior strike conviction.  In so doing, trial counsel provided additional details regarding Lowe's childhood, his mental health issues, and his struggle with substance abuse and addiction.  Trial counsel requested the court impose a stayed term with the requirement that Lowe complete a treatment program.

The trial court declined to strike Lowe's prior strike.  We quote portions of the trial court's ruling at length as it is directly relevant to the errors asserted by Lowe:

> "[THE COURT]:  [C]ounsel, you're right in terms of this Court has some familiarity with Mr. Lowe.  You know, I think early on the Court and those juvenile partners that worked with Mr. Lowe when he was -- gosh, this was probably about 12 years ago, so he must have been, you know, maybe – actually probably longer ago than that.  He was maybe 16 when he first came through the courts -- the juvenile court.  And I know that the Court had referred him to some mental health treatment programs. I think one of those was the DRC program, the Daily Reporting Center, which this

Court feels is a really good program. They had a mental health program that they kind of wove into the Daily Reporting Center.

"Unfortunately it didn't work out for him. I think he was referred through some other mental health treatment programs throughout his kind of time going through the juvenile system. In fact, I think we also had him go through an ACT program, which is Assertive Community Therapy program at one point in time. And so I know that there were opportunities for Mr. Lowe to take advantage of and, you know, a lot of times people aren't ready for that. And I can only, you know, presume that Mr. Lowe wasn't ready to make the changes that needed to be made. And it's not easy to make changes. It's very, very hard to make changes and I recognize that. But I think that Mr. Lowe had other opportunities after that.

"In fact, his first, you know, felony case, he was placed on probation. I think that might have been the case that counsel is alluding to. That might have been when I sentenced him in 2014 and we tried to get him into some programming there as well. I can't remember exactly what type of programming it was. But I think eventually it didn't work out. Again, I don't remember the specifics of why it didn't work out, but he was thereafter sent to prison. As recently as 2019, he was placed on a grant of formal probation again and we find ourselves here placed on probation in February of 2020 and this offense occurred only several months thereafter.

"So the difficulty I have is … that he's been tried on other alternative programs in the past and it hasn't worked out despite a lot of different opportunities for him. That may have a lot to do with Mr. Lowe's not being ready to do the change and do the hard work. I understand that, but at the same time I have to take that into account in determining an appropriate sentence and determining whether or not it's appropriate to strike his prior strike. Based upon the totality of all the circumstances, I don't feel it's appropriate to exercise extraordinary discretion and strike his prior strike. He was on probation for it at the time that this occurred. I mean I kind of agree that, you know, this isn't the most serious offenses in terms of possession of a firearm. It doesn't appear as though there was any immanent [*sic*] use of it. It may very well have been that he felt he needed it for some type of protection of his own because he was living on his streets or whatever else, or maybe because of some paranoia based upon meth use. I don't know. He certainly knew, though, that it was inappropriate and unlawful for him to possess that weapon and possessory crimes are possessory crimes. They usually don't involve violence. They usually involve somebody who knows that they shouldn't have them and ends up having them.

19.

"The problem is also is that somebody in Mr. Lowe's condition may be the type that would be much more readily --somebody that would use a weapon because of history, because of meth use, because of a lot of other things. So I mean in the grand scheme of things, this type of offense is generally not extraordinarily serious, but with Mr. Lowe's history, it's certainly concerning that he had a firearm. That all being said, I'm not going to strike the prior strike. However, knowing Mr. Lowe's prior history, knowing his mental health conditions and his addiction to methamphetamine, the Court definitely has some empathy for his situation."

After declining Lowe's *Romero* motion, the trial court sentenced him to a prison term of two years eight months for possession of a firearm. The trial court imposed a stayed sentence of two years eight months for possession of a short-barreled firearm, and imposed a concurrent sentence of two years for Lowe's violation of his parole.

## B.    Legal Principles

The Three Strikes law requires the application of an alternative sentencing scheme in "every case where the defendant has at least one qualifying strike"—a prior serious and/or violent felony—unless the trial court concludes "for articulable reasons" that the defendant falls outside the Three Strikes sentencing scheme. (*People v. Strong* (2001) 87 Cal.App.4th 328, 337-338.)

A trial court may strike a prior serious felony conviction allegation "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra*, 13 Cal.4th at p. 504.) When exercising its discretion, the court must consider whether the nature and circumstances of the defendant's present felonies and prior serious or violent felony convictions, and the defendant's background, character, and prospects, render the defendant "outside the [Three Strikes] scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Our Supreme Court has explained that only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be

20.

even more extraordinary." (*Ibid.*; see, e.g., *People v. Avila*, *supra*, 57 Cal.App.5th at p. 1151, ["Life in prison for destroying fruit, even when done by someone with a criminal record in the course of an attempted robbery, robs recidivist sentencing of its moral foundation and renders the solemn exercise of judicial authority devoid of meaning"].) " ' "In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Carmony,* at pp. 376-377.)

The refusal to strike a prior conviction is reviewed for an abuse of discretion. (*People v. Carmony, supra,* 33 Cal.4th at p. 375.) A court abuses its discretion when, for example, it is unaware of its discretion, or it considers impermissible factors when declining to strike a prior felony. (*Id.* at p. 378; see, e.g., *People v. Gillispie* (1997) 60 Cal.App.4th 429, 434 [impermissible factors may include consideration of the defendant's race or national origin].) However, "[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305. 310.)

### C.    Analysis

We begin our analysis by observing that while Lowe was only 25 years old at the time of his commitment offense, his record bears out a lengthy criminal history, commencing from when he was 13 years old. As a juvenile, Lowe sustained multiple juvenile court adjudications, including seven counts of failing to obey a lawful order of the juvenile court (Welf. & Inst. Code, § 777) between 2009 and 2012.

Even if we were to exclude consideration of Lowe's juvenile delinquency proceedings, his adult criminal history is significant. Lowe has suffered prior convictions

involving the use or threat of violence. In 2014, when Lowe was 19 years old, he was convicted of battery on a cohabitant (§ 243, subd. (e)(1)), willfully inflicting corporal injury on a cohabitant (§ 273.5, subd. (f)(2)), and dissuading a witness (§ 136.1, subd. (b)(1)). Then, in 2019, he was convicted of attempting to dissuade a witness. (§ 136.1, subd. (a)(1).) These are only the convictions we find relevant.

Between 2014 and 2018, Lowe committed numerous violations of the terms of his post-release community supervision (PRCS) and probation, and he was on formal probation at the time of the current offense. He has a demonstrated history of failing to comply with court orders, including, the failure to participate in various court-ordered treatment programs.

The record simply does not show extraordinary circumstances by which Lowe should be deemed to fall outside of the Three Strikes law. (See, *People v. Strong*, *supra*, 87 Cal.App.4th at p. 332.) Nonetheless, Lowe asserts the trial court erred in denying his *Romero* motion for several reasons, each of which we address below.

### 1. Consideration of Facts Not in the Record, Engaging in Speculation, and Consideration of Facts Not Probative of Future Conduct

Lowe contends the trial court erred by considering facts not in the record in denying his *Romero* motion, including: his purported lack of success in receiving mental health treatment when he was a juvenile, and another program referenced but not described by the trial court.

Although the record does not set forth the full extent of Lowe's participation in various treatment programs, there is evidence showing that he was unable to complete multiple treatment programs. In his written *Romero* motion, Lowe acknowledged that he was unable to complete the Westcare program in 2015. By his own admission, he dropped out of the program after one week. Further, the trial court stated that it had presided over some of Lowe's juvenile delinquency proceedings, it had referred Lowe to some mental health treatment programs, but Lowe had failed to complete those programs.

22.

Lowe did not object to the trial court's statement at the hearing on his motion, he did not proffer evidence contradicting the trial court's statements, nor does he now suggest that the court's statements are inaccurate. We therefore presume the court's statements are accurate.

Lowe suggests that the trial court engaged in improper speculation by concluding that methamphetamine users may be more likely to engage in violence, specifically, by using a weapon. He contends that the trial court's statement is inapplicable to him specifically because he has never been convicted of an offense involving the use of a firearm. We disagree.

The trial court stated that based upon Lowe's use of methamphetamines and "a lot of other things" it was concerning that Lowe had a firearm. As we read the record, the court did not decline to strike his prior strike based upon the fact that Lowe is an admitted methamphetamine addict (See, e.g., *People v. Avila*, *supra*, 57 Cal.App.5th at p. 1148), or because his commitment offense could have been considerably more serious. (*Id*. at p. 1142.) Rather, the trial court was concerned about Lowe potentially using a firearm at some future point given a number of factors. Based upon Lowe's prior convictions, some of which involved violence or the threat of violence, his admitted addiction to methamphetamine, and the fact that Lowe had a firearm in his possession, the trial court's concern was fair.

## 2. Lowe's Juvenile Offenses

Next, Lowe contends the trial court erred by considering his prior juvenile adjudications. Lowe contends: (1) his juvenile adjudications are remote in time in relation to the current offense; (2) the trial court erroneously considered Lowe's lack of success in treatment programs, which he contends, has no bearing on the question of whether his prior strike should be stricken; and (2) because the Legislature has recognized the human brain is not fully developed until the age of 20 or 25, Lowe's conduct before he reached the age of 20 is not relevant to his likelihood of recidivism. We reject his assertions.

23.

First, even assuming Lowe's juvenile court adjudications are remote in time in proximity to the current offense, the record does not affirmatively demonstrate that the trial court placed any weight upon Lowe's adjudications in declining to strike his prior strike. The court stated it was familiar with Lowe because it had presided over some of his juvenile court adjudications—a fact which we cannot expect the trial court to ignore—and that it had referred him to treatment programs, which Lowe had failed to complete. With the exception of Lowe's persistent failure to complete court-ordered treatment programs, the record contains no indication that the trial court found Lowe's juvenile delinquency proceedings to be particularly relevant.

Second, Lowe contends the court erred by considering his lack of success in court-ordered treatment programs. This however was a relevant consideration that was put in issue by Lowe's trial counsel. Trial counsel urged the court to strike Lowe's prior strike, to impose a stayed term, and to order Lowe to participate in a long-term in-patient treatment program. To accomplish this, the trial court would have to strike the prior strike. (See, § 1170.12, subds. (a) & (b).)[8] Thus, Lowe's prior performance in court-ordered treatment programs was pertinent to the question of whether the court should strike his prior strike.

Finally, the record contains no evidence showing the trial court failed to consider mitigating evidence tied to Lowe's youth, specifically, the fact that his brain was presumably not fully developed at the time of his current and prior offenses. At the

---

**8**     The sentencing court is prohibited from imposing a suspended sentence and granting a term of probation when a defendant admits a strike prior within the meaning of sections 667, subdivisions (c) and (e), and 1192.7, subdivision (c), and/or section 1192.7: "[I]f a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious [and/]or violent felony convictions, as defined in subdivision (b), the court shall adhere to each of the following:  [¶] (1) There shall not be an aggregate term limitation for purposes of consecutive sentencing for any subsequent felony conviction.  [¶] (2) *Probation for the current offense shall not be granted, nor shall execution or imposition of the sentence be suspended for any prior offense*." (§ 1170.12, subd. (a), italics added.)

hearing on Lowe's motion, trial counsel cited various factors supporting the conclusion that Lowe had a difficult childhood, a history of drug use and addiction, and that he suffered from mental health issues. Trial counsel added, "Obviously I'm no expert, but it seems like the consensus in the scientific community is that someone's brain doesn't fully develop until closely the age of 25. So just given the trauma that he experienced at a young age and the drug use, I feel like Mr. Lowe would benefit from mercy in this case."

The record does not show the trial court placed any weight on Lowe's juvenile adjudications in denying his *Romero* motion. However, assuming Lowe's criminal conduct as a juvenile was considered by the trial court, we presume the court gave due consideration to the fact that Lowe's judgment and decision-making ability were impaired at the time. (*People v. Myers*, *supra*, 69 Cal.App.4th at p. 310 ["[t]he court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary].)

Lowe was 25 years old or younger at the time of his commitment offenses and his prior strike offense. Thus, he still possessed a youthful brain at the time of his current and prior offenses. In light of trial counsel's argument requesting the court consider this factor, and in the absence of any evidence to the contrary, we presume the court considered this mitigating factor. We conclude that none of the errors asserted by Lowe demonstrate an abuse of the trial court's discretion.

### 3. The Legal Standard Applied by the Trial Court

Finally, Lowe argues that the trial court erred in believing that extraordinary discretion was required to strike the prior strike. Following a lengthy discussion, the trial court below declined to strike Lowe's prior strike, stating, "Based upon the totality of all the circumstances, I don't feel it's appropriate to exercise extraordinary discretion and strike his prior strike."

As the Attorney General correctly observes, "the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the

25.

very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' … the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

We do not interpret the trial court's statements to mean that it applied an incorrect legal standard in determining whether to strike Lowe's prior strike conviction. In our view, the trial court's statement meant the evidence presented did not constitute a showing of extraordinary circumstances such that "no reasonable people could disagree that [Lowe] falls outside the spirit of the three strikes scheme." (*People v. Carmony, supra*, 33 Cal.4th at p. 378.) Lowe's assertions to the contrary are unpersuasive.

## III.     Imposition of the Restitution Fine

Lowe contends the trial court erred by imposing a $300 restitution fine (former § 1202.4, subd. (b)(2)), and a matching stayed parole revocation restitution fine (§ 1202.45). According to Lowe, the record does not contain substantial evidence establishing his ability to pay the restitution fines, and the fact that the court declined to impose a court operations assessment (§ 1465.8) or a criminal conviction assessment (Gov. Code, § 70373), supports the conclusion that he is unable to pay the fine.

Lowe urges this court to analyze imposition of the restitution fine under the due process analysis applied by the court in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). He does not challenge imposition of the restitution fine under the excessive fines clause of the federal and state Constitutions.

The Attorney General argues the issue must be analyzed under the excessive fines clause of the federal and state Constitutions, in which a defendant's ability to pay is only one factor to consider in determining whether a punitive fine is unconstitutionally excessive. (See *United States v. Bajakajian* (1998) 524 U.S. 321, 337-338 [in determining whether a fine is constitutionally excessive, the court must consider: (1) the

26.

defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay].)

Lowe does not address any of the three other factors discussed in *United States v. Bajakajian*; he argues only that he lacks the ability to pay the restitution fines under the due process analysis applied in *Dueñas*.[9]

Lowe concedes that he failed to challenge imposition of the restitution fines below. Indeed, the record contains no indication that Lowe requested an ability to pay hearing, or that he otherwise challenged imposition of the restitution fines on due process grounds or equal protection grounds (see, *Dueñas*, *supra*, 30 Cal.App.5th 1157), or under the excessive fines clause of the federal and state Constitutions (see, *Kopp, supra*, 38 Cal.App.5th at pp. 96-97, review granted). He contends that if this issue is deemed forfeited, his trial counsel rendered ineffective assistance of counsel by failing to challenge imposition of the restitution fines at sentencing.

We conclude Lowe has forfeited his challenge to the restitution fine by failing to object below. Insofar as Lowe contends trial counsel rendered ineffective assistance of counsel by failing to preserve this issue, we find no error.

---

[9] The question of whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments and, if so, which party bears the burden of proof regarding the defendant's ability to pay, is currently pending review before the California Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844 (*Kopp*).) In *Kopp*, the appellate court held the imposition of punitive fines should be challenged and analyzed under the excessive fines clause. The court further held, "there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine and only impose the fine if it determines the defendant can afford to pay it." (*Id.* at pp. 96-97.)

Lowe's failure to challenge imposition of the restitution fines on due process grounds and under the excessive fines clause is puzzling. Notwithstanding, because Lowe did not object below and he does not raise a challenge to the restitution fine as unconstitutionally excessive on appeal, we do not address the Attorney General's argument that the fine is constitutional under the Eighth Amendment.

## A. Lowe's *Dueñas* Claim Has Been Forfeited

Lowe's sentencing hearing was held on February 4, 2021, more than two years after the Second District, Division 7 Court of Appeal filed their opinion in *Dueñas*, *supra*, 30 Cal.App.5th 1157 on January 8, 2019. Although the trial court imposed the minimum amount authorized by statute, which expressly precludes consideration of a defendant's ability to pay as a basis for waiving the fine (see § 1202.4, subd. (c)), we cannot say with confidence that an objection to the restitution fine on constitutional grounds would have been futile.

The law remains unsettled as to whether the restitution fine may be imposed without regard to a defendant's ability to pay. (See, *Dueñas, supra*, 30 Cal.App.5th at p. 1168-1169, 1172 [finding that due process prohibits a trial court from imposing court assessments under section 1465.8 and Government Code section 70373, and requires the trial court to stay execution of any restitution fines until it ascertains the defendant's ability to pay those assessments and fines]; but see, *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061 [disagreeing with *Dueñas's* due process analysis and concluding constitutional challenge to fines, fees and assessments should be made under the excessive fines clause]; *Kopp, supra,* 38 Cal.App.5th at pp. 95-96, review granted [following *Dueñas* as to court-imposed assessments, but not restitution fines]; *People v. Son* (2020) 49 Cal.App.5th 565, 592-596 & fn. 20 [concluding that a defendant is not constitutionally entitled to an ability to pay hearing prior to imposition of restitution fines, which are punitive].)

Moreover, the trial court below declined to impose a court operations fee (§ 1465.8) and a criminal conviction fee (Gov. Code, § 70373) based upon Lowe's "inability to pay." Thus, there is evidence supporting the conclusion that Lowe lacks the ability to pay not only the assessments, which typically total $70, but by implication, the greater $300 restitution fine. Nonetheless, a timely objection to imposition of the restitution fine was not raised below.

We conclude Lowe forfeited his challenge the restitution fine on due process grounds by failing to object or otherwise timely raise the issues below. We therefore turn to Lowe's claim of ineffective assistance of counsel.

**B.      No Ineffective Assistance of Counsel Established**

To establish a claim of ineffective assistance of counsel, Lowe must show:  (1) his counsel's performance fell below an objective standard of reasonable competence and (2) he was prejudiced from it. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688; *People v. Lucas* (1995) 12 Cal.4th 415, 436.)  He must demonstrate a reasonable probability a different result would have occurred absent the alleged errors.  (*People v. Williams* (1997) 16 Cal.4th 153, 215.)  We conclude Lowe has failed to meet his burden of showing ineffective assistance of counsel.

In *People v. Son, supra,* 49 Cal.App.5th at page 577, the lead opinion of this court rejected the appellant's claim that he was entitled to an ability to pay hearing prior to imposition of restitution fines.  As the lead opinion explained, "fines imposed as punishment ([t]here, the restitution fine) are subject to the existing constitutional rule that monetary punishments in and of themselves need not be adjusted in accordance with ability to pay." (*Ibid.*)  In light of our conclusion that Lowe was not entitled to an ability to pay hearing on the restitution fines, which are punitive, we conclude that Lowe has failed to demonstrate trial counsel's performance "fell below an objective standard of reasonableness" (*Strickland v. Washington, supra,* 466 U.S. at pp. 687-688) by failing to object to imposition of the fine below.

**C.      Lowe's Request for Judicial Notice**

On October 28, 2021, Lowe filed a motion for judicial notice, requesting this court take judicial notice of the Solicitor General's answering brief on the merits, filed in our Supreme Court in *Kopp*. The Attorney General filed an opposition to Lowe's motion, suggesting that Lowe may be seeking to judicially estop him from making a contrary legal argument to any arguments made in *Kopp*. While court records may be the proper

subject of judicial notice (see, Evid. Code, § 452, subd. (d)), a party's legal arguments in an unrelated matter are generally not. His motion requesting judicial notice is denied.

## **DISPOSITION**

The judgment of conviction is affirmed.


SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DE SANTOS, J.